

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| UNITED STATES OF AMERICA | : | CRIMINAL NO. _10 cr 227-1-3_ |
|---|---|---|
| v. | : | DATE FILED **FILED APR 1 4 2010** |
| JONATHAN COBB,<br>a/k/a "JC,"<br>DAVID COBB,<br>a/k/a "Sweat,"<br>DARREN MACKLIN,<br>a/k/a "Sporty" | :<br><br>:<br><br>:<br><br>: | VIOLATIONS:<br>21 U.S.C. § 846 (conspiracy to distribute<br>500 grams or more of cocaine<br>- 1 count)<br>21 U.S.C. § 841(a)(1) (possession with<br>intent to distribute 500 grams or more of<br>cocaine - 1 count)<br>18 U.S.C. § 2 (aiding and abetting)<br>Notice of Forfeiture |

### INDICTMENT

### COUNT ONE

**THE GRAND JURY CHARGES THAT:**

1. From in or about August 2009 through on or about October 20, 2009 in Chester, in the Eastern District of Pennsylvania, and elsewhere, defendants

**JONATHAN COBB,**
a/k/a "JC,"
**DAVID COBB,**
a/k/a "Sweat," and
**DARREN MACKLIN,**
a/k/a "Sporty,"

conspired and agreed, together and with others known and unknown to the grand jury, to knowingly and intentionally distribute 500 grams or more, that is, at least 3 kilograms, of a mixture and substance containing a detectable amount of cocaine, a Schedule II controlled substance, in violation of Title 21, United States Code, Section 841(a)(1), (b)(1)(B).

## MANNER AND MEANS

It was a part of the conspiracy that:

2. Defendants **JONATHAN COBB, DAVID COBB,** and **DARREN MACKLIN** were members of a drug organization that distributed cocaine from various locations in Chester, Pennsylvania and elsewhere.

## OVERT ACTS

In furtherance of the conspiracy and to accomplish its object, defendants **JONATHAN COBB, DAVID COBB,** and **DARREN MACKLIN,** and others known and unknown to the grand jury committed the following overt acts, among others, in the Eastern District of Pennsylvania, and elsewhere:

1. In or about August 2009, defendant **DAVID COBB** made a street-level drug sale to one of defendant **JONATHAN COBB**'s regular drug customers at the direction of defendant **JONATHAN COBB**.

2. On or about September 29, 2009, defendant **JONATHAN COBB** called a drug supplier in West Philadelphia (the "West Philadelphia supplier") to arrange for the purchase of cocaine.

On or about October 1, 2009:

3. Defendant **JONATHAN COBB** called the West Philadelphia supplier to arrange the purchase of 1 kilogram of cocaine.

4. Defendant **JONATHAN COBB** then traveled to West Philadelphia to meet the drug supplier to purchase 1 kilogram of cocaine.

2

5. On or about October 3, 2009, defendant **JONATHAN COBB** received a telephone call from a different drug supplier (the "North Philadelphia supplier"). The North Philadelphia supplier called to ask defendant **JONATHAN COBB** whether he needed more cocaine. Defendant **JONATHAN COBB** informed the North Philadelphia supplier that he had completed selling one kilogram quantity of cocaine and was in the process of selling from a second kilogram of cocaine. Defendant **JONATHAN COBB** told the North Philadelpnia supplier that he would contact him when he needed more cocaine.

On or about October 4, 2009:

6. Defendant **JONATHAN COBB** called the West Philadelphia supplier to arrange the purchase of cocaine.

7. Defendant **JONATHAN COBB** then traveled to West Philadelphia to purchase an unspecified quantity of cocaine.

On or about October 7, 2009:

8. Defendant **JONATHAN COBB** called the West Philadelphia supplier to arrange the purchase of more cocaine.

9. Defendant **JONATHAN COBB** called defendant **DAVID COBB** to ask defendant **DAVID COBB** to travel with him to West Philadelphia to purchase the cocaine from the West Philadelphia supplier.

10. Defendants **JONATHAN COBB** and **DAVID COBB** traveled together to West Philadelphia to meet the West Philadelphia supplier to purchase cocaine.

11. On or about October 9, 2009, defendant **JONATHAN COBB** called the West Philadelphia supplier to arrange the purchase of cocaine.

3

12. On or about October 10, 2009, defendant **JONATHAN COBB** traveled to West Philadelphia to purchase cocaine from the West Philadelphia supplier.

On or about October 16, 2009:

13. Defendant **DAVID COBB** called defendant **JONATHAN COBB** to discuss purchasing more cocaine together.

14. After trying numerous times to call the West Philadelphia supplier, defendant **JONATHAN COBB** called defendant **DAVID COBB** to inform him that he was unable to contact his preferred West Philadelphia cocaine supplier. Defendants **JONATHAN COBB** and **DAVID COBB** then discussed contacting the North Philadelphia supplier to purchase cocaine.

15. Defendant **JONATHAN COBB** called the North Philadelphia supplier to arrange the purchase of one kilogram of cocaine.

16. Defendants **JONATHAN COBB** and **DAVID COBB** then traveled to North Philadelphia to purchase one kilogram of cocaine from the North Philadelphia supplier.

17. En route to North Philadelphia to purchase the cocaine from the North Philadelphia supplier, defendant **JONATHAN COBB** called defendant **MACKLIN** to tell him that a Person #1 known to the grand jury would be delivering money to defendant **MACKLIN** that the Person #1 owed to defendant **JONATHAN COBB** for a previous drug transaction.

18. Defendant **DARREN MACKLIN** collected the drug debt owed to defendant **JONATHAN COBB**, and thereafter, defendant **MACKLIN** gave the money he had collected to defendant **JONATHAN COBB**.

19.   On or about October 19, 2009, defendant **JONATHAN COBB** called Person #2 known to the grand jury, who stored defendant **JONATHAN COBB**'s cocaine in Person #2's home, to tell Person #2 that he (defendant COBB) would meet her there to retrieve his drugs.

On or about October 20, 2009:

20.   Defendant **JONATHAN COBB** called the North Philadelphia supplier to negotiate the price for, and arrange the purchase of one kilogram of cocaine.

21.   Defendant **JONATHAN COBB** called defendant **DAVID COBB** to ask him to travel with him to North Philadelphia to purchase the cocaine. Defendants **JONATHAN COBB, DAVID COBB,** and **DARREN MACKLIN** talked on the telephone several times to arrange the point of departure for their trip from Chester to North Philadelphia to purchase the cocaine.

22.   Defendants **JONATHAN COBB, DAVID COBB,** and **DARREN MACKLIN** traveled together in two different cars to North Philadelphia to purchase approximately one kilogram of cocaine.

23.   After purchasing the cocaine, defendants **JONATHAN COBB, DAVID COBB,** and **DARREN MACKLIN** drove back together from North Philadelphia to Chester in two cars with the cocaine wrapped in a plastic bag in one of the cars.

All in violation of Title 21, United States Code, Section 846.

## COUNT TWO

**THE GRAND JURY FURTHER CHARGES THAT:**

1. Paragraph 2 and Overt Acts 20 through 23 of Count One of this superseding indictment are incorporated here,

2. On or about October 20, 2009, in the city of Chester, in the Eastern District of Pennsylvania, defendants

**JONATHAN COBB,**
a/k/a "JC,"
**DAVID COBB,**
a/k/a "Sweat," and
**DARREN MACKLIN,**
a/k/a "Sporty,"

knowingly and intentionally possessed with intent to distribute, and aided and abetted the possession with intent to distribute of, 500 grams or more, that is, approximately 997 grams, of a mixture and substance containing a detectable amount of cocaine, a Schedule II controlled substance.

In violation of Title 21, United States Code, Section 841(a)(1), (b)(1)(B), and Title 18, United States Code, Section 2.

## **NOTICE OF FORFEITURE**

**THE GRAND JURY FURTHER CHARGES THAT:**

      1.    As a result of the violations of Title 21, United States Code, Sections 846 and 841(a)(1), set forth in this superseding indictment, defendants

**JONATHAN COBB,**
a/k/a "JC,"
**DAVID COBB,**
a/k/a "Sweat," and
**DARREN MACKLIN,**
a/k/a "Sporty,"

shall forfeit to the United States:

      a.  any and all real or personal property constituting, or derived from, any proceeds obtained directly or indirectly as a result of such violations; and

      b.  any and all real or personal property used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of such violations.

      2.    If any of the property subject to forfeiture, as a result of any act or omission of the defendant:

      (a)    cannot be located upon the exercise of due diligence;

      (b)    has been transferred or sold to, or deposited with, a third party;

      (c)    has been placed beyond the jurisdiction of the Court;

      (d)    has been substantially diminished in value; or

      (e)    has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), to

seek forfeiture of any other property of the defendant up to the value of the property subject to forfeiture.

All pursuant to Title 21, United States Code, Section 853.

**A TRUE BILL:**

_____
**GRAND JURY FOREPERSON**

_____
**MICHAEL L. LEVY**
**United States Attorney**