IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES | : | CRIMINAL ACTION |
| | : | NO. 09-733-01 |
| v. | : | |
| | : | CIVIL ACTION |
| JONATHAN COBB | : | NO. 13-4754 |

M E M O R A N D U M

EDUARDO C. ROBRENO, J.                          June 24, 2015

          Petitioner Jonathan Cobb is a federal prisoner
incarcerated at the Federal Correctional Institution, Fort Dix
(New Jersey), serving a sentence of incarceration of 288 months
(24 years) for drug-related offenses. Cobb filed a pro se
petition under 28 U.S.C. § 2255 to vacate, set aside, or correct
his sentence, making several claims – including that he received
ineffective assistance of counsel at the plea bargaining stage.
The Court granted him an evidentiary hearing on that claim and
appointed counsel to represent him. Now, following the
evidentiary hearing and additional briefing, the motion is ripe
for disposition. For the reasons that follow, the Court will

grant the § 2255 petition on this claim, and order further briefing to determine what kind of relief Petitioner is owed.

## I.   BACKGROUND

Petitioner was arraigned on the First Superseding Indictment, ECF No. 81, on April 29, 2010, for one count of conspiracy to distribute 500 grams or more of cocaine, in violation of 21 U.S.C. § 841(a)(1) & (b)(1)(B), and one count of possession with intent to distribute 500 grams or more of cocaine, in violation of 21 U.S.C. § 841(a)(1) & (b)(1)(B), and aiding and abetting, in violation of 18 U.S.C. § 2. At his April 29, 2010 arraignment, Petitioner entered a plea of not guilty.

Following a five-day trial, a jury convicted Petitioner and co-conspirator David Cobb (Petitioner's brother) on all counts.[1] At sentencing, the Court fixed Petitioner's Guidelines range at 130 to 162 months of custody. Sentencing Hr'g Tr. 45:14-19, ECF No. 210. The Court granted the Government's motion for a variance, and Petitioner was sentenced to 288 months of imprisonment, 8 years supervised release, and a $2,500 fine. District Court Judgment 1, ECF No. 186. On November 10, 2010, Petitioner filed a Notice of Appeal through Counsel. Pet.'s Notice of Appeal 1, ECF No. 186. On May 25, 2012, the

---

[1]     A third co-defendant, Darren Macklin, was found not guilty on all charges. See Judgment of Acquittal as to Darren Macklin, ECF No. 157.

Third Circuit affirmed the decision of the District Court as to both Petitioner and David Cobb. Third Circuit Judgment 2, ECF No. 215.[2]

Petitioner claims in his pro se § 2255 Petition that counsel was ineffective for failing to:

1. Advise Petitioner of 21 U.S.C. § 851 notice and challenge the notice;

2. Challenge the Government's affidavit in support of wiretap evidence;

3. Advise Petitioner of the advantages of entering a guilty plea; and

4. Provide real notice to Petitioner of the conspiracy charge.

He also makes a supplemental claim of a Sixth Amendment Due Process violation based on Alleyne v. United States, 133 S. Ct. 2151 (2013).

On September 9, 2014, the Court entered an Order, ECF No. 241, with accompanying Memorandum, ECF No. 240, granting

---

[2]     On August 15, 2013, Petitioner filed a pro se motion to vacate his sentence pursuant to 28 U.S.C. § 2255. Motion to Vacate/Set Aside/Correct Sentence, ECF No. 218. On October 23, 2013, the Court directed the Clerk of Court to provide Petitioner with a blank copy of the Court's current standard form for filing a 28 U.S.C. § 2255 petition, ECF No. 225, and on January 10, 2014, Petitioner resubmitted his § 2255 Petition on the proper form, ECF No. 227.

The Government submitted a response in opposition to the § 2255 Petition on February 28, 2014. ECF No. 230. Petitioner filed a pro se supplemental brief in support of his petition on March 3, 2014. ECF No. 231. Additionally, Petitioner filed a pro se reply to the Government's response in opposition on April 10, 2014. ECF No. 234.

Petitioner an evidentiary hearing as to his claim of ineffective assistance due to counsel's failure to inform Petitioner of the options and benefits of entering an open plea. The Court denied the balance of Petitioner's § 2255 claims. United States v. Cobb, No. 09-733-01, 2014 WL 4433868 (E.D. Pa. Sept. 9, 2014).

On November 7, 2014, the Court held an evidentiary hearing, at which Petitioner was represented by Caroline Goldner Cinquanto, Esquire. Petitioner and Petitioner's trial counsel, William T. Cannon, testified. Following the hearing, Petitioner filed a counseled supplemental brief in support of his § 2255 Petition. ECF No. 251. The Government filed a Response, ECF No. 252, and Petitioner filed a Reply Brief, ECF No. 258. Petitioner also filed a Motion to Amend his § 2255 Petition, arguing that his claim that his trial counsel provided ineffective assistance by grossly miscalculating his sentencing exposure relates back to his original claim. The Government did not oppose the motion, and the Court granted it. ECF No. 259.

Petitioner's remaining claim is now ripe for disposition.

## II. LEGAL STANDARD

A federal prisoner "claiming the right to be released . . . may move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a).

Such a prisoner may attack his sentence on any of the following grounds: (1) the sentence was imposed in violation of the Constitution or laws of the United States; (2) the court was without jurisdiction to impose the sentence; or (3) the sentence was in excess of the maximum authorized by law. Id. An evidentiary hearing on the merits of a prisoner's claims is necessary unless it is clear from the record, viewed in the light most favorable to the petitioner, that he is not entitled to relief. Id. § 2255(b). The court is to construe a prisoner's pro se pleading liberally, Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam), but "vague and conclusory allegations contained in a § 2255 petition may be disposed of without further investigation," United States v. Thomas, 221 F.3d 430, 437 (3d Cir. 2000).

A § 2255 petition may be based upon a violation of the Sixth Amendment right to effective assistance of counsel. See Strickland v. Washington, 466 U.S. 668, 686, 697 (1984). By claiming his counsel was ineffective, a defendant attacks "the fundamental fairness of the proceeding." Id. at 697. Therefore, as "fundamental fairness is the central concern of the writ of habeas corpus," "[t]he principles governing ineffectiveness should apply in federal collateral proceedings as they do on direct appeal or in motions for a new trial." Id. Those principles require a convicted defendant to establish both that

5

(1) his counsel's performance was deficient, and (2) the deficient performance prejudiced his defense. Id. at 687; Holland v. Horn, 519 F.3d 107, 120 (3d Cir. 2008).

To prove deficient performance, a petitioner must show that his "counsel's representation fell below an objective standard of reasonableness." Id. (quoting Harrington v. Richter, 562 U.S. 86, 104 (2011)). The court's "scrutiny of counsel's performance must be highly deferential." Douglas v. Cathel, 456 F.3d 403, 420 (3d Cir. 2006) (quoting Strickland, 466 U.S. at 689). Accordingly, there is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Grant v. Lockett, 709 F.3d 224, 234 (3d Cir. 2013) (quoting Strickland, 466 U.S. at 689). In raising an ineffective assistance claim, the petitioner must first identify the acts or omissions alleged not to be the result of "reasonable professional judgment." Strickland, 466 U.S. at 690. Next, the court must determine whether those acts or omissions fall outside of the "wide range of professionally competent assistance." Id.

To prove prejudice, a convicted defendant must affirmatively prove that the alleged attorney errors "actually had an adverse effect on the defense." Id. at 693. "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the

proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694.

**III. DISCUSSION**

Petitioner's remaining claim, which was explored at the evidentiary hearing, is that his trial counsel provided ineffective assistance by failing to properly inform him of the option and benefits of entering an open plea, including by grossly miscalculating his sentencing exposure.

A.   The Evidentiary Hearing

At the evidentiary hearing, Petitioner's trial counsel, William T. Cannon, testified that before trial, Petitioner and Cannon discussed Petitioner's three options: "simply to plead guilty," "to plead guilty with cooperation with the government," or "simply to go to trial." Evidentiary Hr'g Tr. 5:12-15, Nov. 7, 2014 [hereinafter Hr'g Tr.]. Cannon also testified that he discussed the Sentencing Guidelines with Petitioner, and in doing so, "explained the benefits of pleading guilty with or without cooperation in terms of reducing the offense level by three levels." Id. 5:16-21. In support of this testimony, the Government introduced a letter Cannon wrote to Petitioner on June 1, 2010 – just two weeks before trial was scheduled to begin. Letter from William T. Cannon, Esq., to

Jonathan Cobb (June 1, 2010), Gov. Ex. 2 [hereinafter June 1 Letter]. In that letter, Cannon said, "As you know, I am prepared to try this case if that must be done, but I have consistently urged you to consider either simply pleading guilty or pleading guilty with continued cooperation with the government." Id. (emphasis added). The letter also said, "You may think right now that there is some satisfaction to be derived from refusing to plead guilty or refusing to cooperate," and explained to Petitioner why he should consider cooperating with the Government. Id. (emphasis added).

While cross-examining Cannon, counsel for Petitioner focused largely on whether Cannon had correctly informed Petitioner before trial of his likely sentencing exposure. Cannon testified that at some point in time, he and the Government incorrectly believed Petitioner was a career offender – a designation that would increase his Guidelines range from 130-162 months to 360 months to life. Hr'g Tr. 11:8-12:8, 15:10-17. Initially, Cannon believed that he had learned "a month or two before the trial" –sometime in April or May 2010 – that Petitioner was not, in fact, a career offender. Id. 12:23-24. However, counsel pointed out that based on notes Cannon had created on June 1, 2010 – the same day he wrote the letter discussed above – Cannon clearly still believed as of that date that Petitioner was a career offender. Id. 26:9-27:21;

8

Def. Ex. 3. Nonetheless, Cannon testified that he must have
realized Petitioner was not a career offender sometime between
writing those notes and writing the letter to Petitioner that
same day, although the letter did not mention that realization.
Hr'g Tr. 28:1-13, 33:4-35:1. And Cannon maintained that even if
he did <u>not</u> come to that realization on June 1, "the important
thing" is that he did learn before trial that Petitioner was not
a career offender. <u>Id.</u> 48:22-49:11, 55:4-7.

Petitioner also testified. He stated that he learned
for the first time that he was not a career offender when he
received his presentence investigation report, and that Cannon
also seemed surprised to learn of that fact. <u>Id.</u> 57:8-25.
Petitioner testified that he could not recall Cannon telling him
about the option of pleading open, <u>id.</u> 59:16-24, and that Cannon
only urged Petitioner to "plead guilty with continued
cooperation," <u>id.</u> 60:7-11. He also said that he did not
understand from the June 1 Letter that "simply pleading guilty"
meant that Petitioner could plead guilty without cooperating
with the Government, or what the benefits of doing that would
be. <u>Id.</u> 65:15-67:12.

A week after the evidentiary hearing, Cannon sent a
follow-up letter to the Government. The parties filed a
stipulation supplementing the record with this letter, which
stated:

The sub issue that evolved at the hearing was whether, going into trial the defendant believed himself to be a career offender with an offense level of 37 and a criminal history of 6 (360 to life) or a 28/5 (130-162 months). Based on Cobb's 3 prior felony convictions (2 armed robberies and possession with intent to deliver) both Larry Leverett and I were both of a mind that he was a career offender. Relying on my letter to Cobb of June 1, 2010 it is clear that I was still under that impression as of that date. Nevertheless at the hearing I testified that prior to the commencement of trial on or about June 18, 2010 (a 7 day trial with a jury verdict on June 25, 2010) that I had come to realize that he was not a career offender and had communicated that to him in one or more of the several conferences we had immediately before trial. I so testified because while trying to recall events that had taken place over 4 years earlier that is what I believed. I was sworn to tell the truth at the hearing and had no incentive to try to offer anything else.

When I saw that this litigation had not been concluded I was prompted to call Larry Leverett. We spoke and it was his recollection that he did not realize that Cobb was not a career offender until the PSR issued (post trial, of course). If his recollection is correct then there is little doubt that I too believed Cobb to be a career offender entering into trial in which case Cobb would have shared that belief based on my advice. At any rate if Cobb testified at the hearing that he believed himself to be a career offender entering into trial then he is probably correct for whatever impact that testimony matters in resolving the 2255. As an officer of the Court I thought it necessary to bring all of this to your attention.

Stipulation, ECF No. 250.[3]

---

[3]      The parties did not ask to reopen the hearing to take Leverett's testimony live or to recall Cannon to the stand to test his refreshed recollection.

B.   <u>Cannon's Alleged Failure to Advise Petitioner of
     Option of Open Plea</u>

It is evident, from both Cannon and Petitioner's
testimony, as well as the June 1 Letter, that Cannon strongly
encouraged Petitioner to cooperate with the Government. That
does not mean, however, that Cannon did not <u>also</u> explain to
Petitioner the option of pleading open. On this point, the
testimony of Petitioner and Cannon directly conflicts – Cannon
claims that he fully explained the open plea option and its
benefits, while Petitioner claims that cooperation was the <u>only</u>
plea-related advice he could recall receiving from Cannon.
Cannon's testimony, though, is supported by other evidence in
the record – specifically, his June 1 letter to Petitioner, in
which he says, "I have consistently urged you to consider either
<u>simply pleading guilty</u> or pleading guilty with continued
cooperation with the government," and, "You may think right now
that there is some satisfaction to be derived from <u>refusing to
plead guilty</u> or refusing to cooperate." June 1 Letter (emphasis
added). These portions of the letter clearly reference an option
beyond cooperation – an option that Cannon says, in the letter,
he has already discussed with Petitioner in the past. As a
result, though Cannon apparently spent more time attempting to
persuade Petitioner to cooperate with the Government, this

letter bolsters his testimony that he also informed Petitioner
of his right to plead open.

Accordingly, considering both men's testimonies, as
well as the other evidence in the record, the Court finds that
Petitioner has not established a reasonable probability – one
sufficient to undermine confidence in the outcome, Strickland,
466 U.S. at 694 – that Cannon did not properly inform him of the
option to plead open.

C.   Cannon's Alleged Gross Miscalculation of Petitioner's
     Sentencing Exposure

Even assuming that Cannon did tell Petitioner of the
option of pleading open, Cannon still offered ineffective
assistance by dramatically miscalculating Petitioner's
sentencing exposure.

It is well-established that "a defendant has the right
to make a reasonably informed decision whether to accept a plea
offer." United States v. Day, 969 F.2d 39, 43 (3d Cir. 1992).
See also Hill v. Lockhart, 474 U.S. 52, 56-57 (1985)
(voluntariness of guilty plea depends on adequacy of counsel's
advice); Von Moltke v. Gillies, 332 U.S. 708, 721 (1948) ("Prior
to trial an accused is entitled to rely upon his counsel to make
an independent examination of the facts, circumstances,
pleadings and laws involved and then to offer his informed
opinion as to what plea should be entered."). A petitioner has a

Sixth Amendment claim when "the advice that he received was so incorrect and so insufficient that it undermined his ability to make an intelligent decision about whether to accept the [plea] offer." Day, 969 F.2d at 43. While there is no precise "standard defense counsel must meet when advising their clients about the desirability of a plea bargain and, concomitantly, about sentence exposure," the Third Circuit has held that "familiarity with the structure and basic content of the Guidelines (including the definition and implications of career offender status) has become a necessity for counsel who seek to give effective representation." Id.

In United States v. Day, the petitioner was a career offender. 969 F.2d at 41. However, according to his § 2255 petition, his trial counsel failed to explain to him prior to trial that he was a career offender and told him that, if found guilty, he could receive no more than eleven years in prison. As a result of this advice, the petitioner alleged, he rejected a plea offer that would have resulted in a five-year sentence, and instead proceeded to trial, resulting in a conviction and a sentence of twenty-two years. Id. The Third Circuit held that the petitioner was entitled to an evidentiary hearing on this claim, because if "he was seriously misled about his sentence exposure when the likelihood of his conviction was overwhelming, he received ineffective assistance of counsel." Id. at 44. The

court also noted that prejudice was "theoretically possible," because "the Sixth Amendment right to effective assistance of counsel guarantees more than the Fifth Amendment right to a fair trial." Id. at 45.

Here, it is now undisputed that trial counsel gave Petitioner incorrect information about his career offender status, leading to a substantial miscalculation of his sentencing exposure. In order to provide effective representation, defense attorneys are required to understand "the definition and implications of career offender status." Day, 969 F.2d at 43. Counsel failed to do so here, representing to Petitioner that he was a career offender and, as a result, that Petitioner's Guidelines range was years higher than it actually was. Specifically, Petitioner believed that if found guilty at trial, his Guidelines range would be 360 months to life, when it was actually only 130 to 162 months – and 100 to 125 months if he pled guilty instead of proceeding to trial. As a result, Petitioner "was seriously misled about his sentence exposure when the likelihood of his conviction was overwhelming," and so this fact alone is sufficient to show that counsel's performance was deficient.[4] Id. at 44.

---

[4]      The Government all but concedes that trial counsel provided deficient performance here – in its Response to Petitioner's Supplemental Brief, the Government made no argument as to the deficiency prong and moved directly to the prejudice

The critical question, then, is whether Petitioner was prejudiced by this deficient performance. Petitioner faces two hurdles: first, the question whether a person who discovers after trial that his sentencing exposure was much shorter than he was told by counsel can be prejudiced in any case, and second, the requirement that he show that "but for counsel's deficient performance there is a reasonable probability he and the trial court would have accepted the guilty plea" and he would have received a lesser sentence had he pled guilty. Lafler v. Cooper, 132 S. Ct. 1376, 1391 (2012).

Petitioner's situation resembles that of the petitioner in Day in the sense that both alleged that their lawyers gave them incorrect information about their respective statuses as career offenders. In Day, though, the incorrect information was that the petitioner was not a career offender; it is easy to see the possibility of prejudice where someone was erroneously told he could receive no more than eleven years in prison, but then was actually sentenced to twenty-two. Here, in contrast, Petitioner was told that he was a career offender when he was not, raising the question: can an individual be

---

prong, saying, "Assuming Attorney Cannon's mistaken belief that Cobb was facing the career offender advisory guideline range constituted ineffective assistance, Cobb is unable to show that he was prejudiced by this advice." Gov't Resp. 15, ECF No. 252.

prejudiced by the mistaken belief that his sentencing exposure was <u>higher</u> than it was in reality?

Under the circumstances of this case, the answer is yes. While it is true that a defendant who believes he will receive a sentence of at least 360 months but is actually exposed to no more than 162 is in a far better position than he believes, that misinformation may nonetheless impact the decisions he makes about whether to plead guilty or proceed to trial. As the Third Circuit noted in <u>Day</u>, "[k]nowledge of the comparative sentence exposure between standing trial and accepting a plea offer will often be crucial to the decision whether to plead guilty." 969 F.2d at 43. It is the "comparative sentence exposure," of course, that makes the difference, and in that sense, it is not dispositive whether a defendant's sentencing exposure is higher or lower than he believes – because either way, that belief may cause him to make a decision he would not have made otherwise that ultimately places him in a worse position than the alternative.

In this case, for example, based on what counsel told him, Petitioner mistakenly believed he was facing nearly thirty years in prison, even if he pled guilty and received the benefits of acceptance of responsibility, because he thought his baseline sentencing range was 360 months to life. Under these circumstances, it is not difficult to understand why

16

Petitioner – or another defendant in his situation – might have believed he had little to lose by proceeding to trial.[5] Accordingly, under the Day construct, it is "theoretically possible" for an individual whose sentencing exposure was actually much less than he believed during the plea bargaining process – due to deficient performance by counsel – to have suffered prejudice from that incorrect belief.

Having established that a person in Petitioner's situation is eligible to prove prejudice, the Court must determine whether Petitioner has in fact done so in this case. A petitioner who chose not to plead guilty due to ineffective counsel "must show that but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court . . ., that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed." Lafler, 132 S. Ct. at 1385. In other words, Petitioner must show the reasonable probability of two things: (1) that he would have pled guilty had he known of his true sentencing

---

[5]     And, of course, it is well established that a defendant can suffer prejudice from ineffective assistance at the plea bargaining stage even though he ultimately received a fair trial. See Lafler, 132 S. Ct. at 1385-88; Day, 969 F.2d at 44 (citing United States ex rel. Caruso v. Zelinsky, 689 F.2d 435, 438 (3d Cir. 1982)).

exposure, and (2) that, had he pled guilty, he would have received a lesser sentence.

Petitioner has demonstrated a reasonable probability that he would have chosen to plead guilty, but for counsel's ineffective advice. Petitioner states that had trial counsel properly advised him about his plea options, he "would have definitely pled guilty in this case, instead of rolling the dice at trial." Mem. Law Supp. § 2255 Pet. 13, ECF No. 227. This statement, while self-serving, is reasonable. Given the choices presented to Petitioner – a potential sentence of nearly thirty years if he pleaded guilty, or a sentence of at least thirty years if he was convicted at trial – it would have been entirely reasonable for Petitioner to choose to go to trial. Viewed in this light, Petitioner's statement that he would have made a different choice had he known his true situation is believable, even while it may be self-serving.

As the Third Circuit has acknowledged, some circuits, in this context, require some kind of "objective evidence" that the petitioner would have pled guilty but for counsel's ineffective advice. See Day, 969 F.2d at 45. The Third Circuit, however, has not yet opted to join those circuits in so holding. See United States v. Purcell, 667 F. Supp. 2d 498, 511-12 (E.D. Pa. 2009) (noting that the Day court reserved ruling on the issue, which remains open in this circuit). At any rate, even if

18

objective evidence is required, under the circumstances here, the enormous disparity between Petitioner's actual sentencing exposure and his purported sentencing exposure as a career offender could be characterized as objective evidence, confirming the veracity and reasonableness of Petitioner's statement. See United States v. Gordon, 156 F.3d 376, 381 (2d Cir. 1998) ("We agree . . . that such a disparity provides sufficient objective evidence – when combined with a petitioner's statement concerning his intentions – to support a finding of prejudice under Strickland."). Accordingly, Petitioner has satisfied the first requirement of the Strickland prejudice inquiry.

Petitioner has also demonstrated a reasonable probability that he would have received a lesser sentence had he pled guilty. Had Petitioner pled guilty without a plea agreement, his sentencing range would have been, at worst,[6] 100 to 125 months, due to the decrease in offense levels granted for acceptance of responsibility. However, because the Government filed an Information Charging Prior Offenses pursuant to 21

---

[6]     Petitioner notes that his base offense level was increased by two levels as a result of evidence presented at trial – evidence that may not have been used to increase his base offense level had he pled guilty before trial, because it was unsupported by anything other than suggestions in wiretap conversations. Without those two levels, his sentencing range would have been 84 to 105 months after a guilty plea.

U.S.C. § 851 (the "§ 851 Notice"), ECF No. 111, Petitioner faced a mandatory minimum of ten years, or 120 months. The parties dispute whether the Government would have filed the § 851 Notice had Petitioner pled guilty – the Government claims that it would have filed the § 851 Notice (which increased the mandatory minimum by five years) no matter what, while Petitioner claims that, as evidenced by the fact that the Government filed the § 851 Notice just weeks before trial, there is a reasonable probability that the Government would not have filed the § 851 Notice had Petitioner pled guilty. At any rate, this debate over the § 851 Notice is of no moment, in that Petitioner's actual Guidelines sentencing exposure after a guilty plea would have been no more than 125 months, even if the Government had filed the § 851 Notice.

　　　An additional complication in this case is that the Court granted the Government's request for an upward variance, ultimately sentencing Petitioner to 288 months. The Government argues that this variance precludes a finding of prejudice, because the Government still would have moved for a variance after a guilty plea and the Court's analysis under § 3553(a) would have been the same. However, two factors create a reasonable probability that even if Petitioner had pleaded guilty and the Court still granted an upward variance, Petitioner's sentence would have been lower.

First, the Court selected 288 months, in part, because that was the sentence that Petitioner's codefendant (his brother) had previously received, and in the Court's view, Petitioner was similarly, if not more, culpable than his brother. Sentencing Hr'g Tr. 37:16-20. Had Petitioner pleaded guilty prior to trial, it is unlikely that the Court would have viewed Petitioner to have been similarly situated to his brother, who was convicted at trial. And second, even if the Court had granted a variance to the same extent, Petitioner's sentence would have been lower because the Court's point of departure for the variance would have begun at a lower Guidelines range. To wit, the upper end of Petitioner's sentencing range was 162 months, so the Court's sentence of 288 months added 126 months to his Guidelines range. Had Petitioner pleaded guilty, the upper end of his sentencing range would have been 125 months, and an upward variance of the same amount of time – 126 months – would have resulted in a sentence of 241 months instead of 288. Or, considering it differently, the Court's sentence of 288 months varied upward by roughly 78% of Petitioner's within-Guidelines sentence of 162 months. Had the Court started from the lower Guidelines range of 125 months instead, and varied upward by the same percentage of time, Petitioner's sentence would have been only 222 months. In short, in order for the Court to have sentenced Petitioner to at least

288 months even with a guilty plea, the Court would have had to impose a greater variance than it did in the absence of a guilty plea. Such a result would have been unlikely.

To be sure, it is possible that had Petitioner pled guilty, the Court would still have sentenced him to at least 288 months of incarceration. But it is reasonably probable that his sentence would have been shorter than that. Even if the difference in sentencing would have been very small – a few months, for example – Petitioner would be prejudiced, because "any amount of actual jail time has Sixth Amendment significance." Glover v. United States, 531 U.S. 198, 203 (2001). As a result, Petitioner has satisfied the requirement that he show a reasonable probability that his sentence would have been shorter had he pled guilty.

Accordingly, Petitioner has demonstrated a reasonable probability both that he would have pled guilty but for the incorrect advice he received, and that if he had pled guilty, his sentence would have been lower. He has thus satisfied the requirements for proving prejudice under Strickland. Because Petitioner received ineffective assistance of counsel, he is entitled to relief under § 2255.

D.   Appropriate Relief Due to Petitioner

The Court turns, then, to the question of what kind of relief Petitioner is owed. Petitioner requests that the Court vacate his sentence and order a new trial. This result would grant Petitioner a windfall, though. In a case where a defendant receives ineffective assistance at the plea bargaining stage, then goes on to be convicted at a fair trial of the same offense that was the subject of the plea offer, the proper remedy is not ordinarily a new trial. Lafler, 132 S. Ct. at 1389. Rather, "the court may exercise discretion in determining whether the defendant should receive the term of imprisonment the government offered in the plea, the sentence he received at trial, or something in between." Id. The Lafler Court noted two specific considerations that are of relevance: first, the district court may consider whether the defendant previously expressed willingness or unwillingness to accept responsibility for his actions, and second, the court is not necessarily required to disregard "any information concerning the crime that was discovered after the plea offer was made." Id. In short, "[t]he time continuum makes it difficult to restore the defendant and the prosecution to the precise positions they occupied prior to the rejection of the plea offer, but that baseline can be consulted in finding a remedy that does not require the prosecution to incur the expense of conducting a new trial." Id.

The parties have not briefed the issue of the proper remedy – rather, as mentioned above, Petitioner simply requests a new trial, while the Government briefly notes the <u>Lafler</u> standard without applying it to this case. Accordingly, the Court will order further briefing on the relief to which Petitioner is entitled.

## IV.  CONCLUSION

For the reasons discussed above, the Court holds that Petitioner received ineffective assistance of counsel at the plea bargaining stage, and will grant his § 2255 petition. The Court will order further briefing on the relief to which Petitioner is entitled as a result.